UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ex.rel. AKIVA TESSLER and FELIX GONZALEZ | **No. 14 CV 6455** |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| against- | **FURMAN, J.** |
| THE CITY OF NEW YORK, | **Jury Trial Demanded** |
| Defendant, | |

The individual plaintiffs herein, as relators, by their attorneys, the Law Office of Paul C. Bierman, the Law Office of Richard B. Ancowitz, and the Law Office of Sanford Rosenblum, complaining of the Defendant, allege the following:

1. That at all times hereinafter mentioned, the Defendant was and is a municipality organized pursuant to the laws of New York State.

2. This Court has jurisdiction over the claims brought herein pursuant to 31 USC 3729 through 3733, and in particular 31 USC 3730 (a), as well as 28 USC 1345.

3. Venue lies in this District pursuant to 31 USC 3732 (a) and 28 USC 1391 (b) and (c), because the Defendant is a municipality situated within this District, and because a substantial part of the acts of the defendant as set forth herein occurred within this District.

4. Plaintiff AKIVA TESSLER is a former Hearing Officer (also commonly known and referred to as "Administrative Law Judge") employed by the State of New York, Office

of Temporary Disability Assistance (hereinafter "OTDA") from January of 2011 through April of 2014.

5.    Among TESSLER's chief responsibilities in said position were to conduct Fair Hearings as between the Defendant THE CITY OF NEW YORK  and social service benefit recipients, and to draft recommended decisions based on the applicable Law, the Regulations, and the factual record at the hearing.

6.    Plaintiff FELIX GONZALEZ was an employee of the Human Resources Administration of THE CITY OF NEW YORK, with a Job Title of Supervisor II, and was employed therein in said position from July 2012 through July 2014.

7.    Among GONZALEZ' chief responsibilities in said position were to advocate and advance the interests and position of THE CITY OF NEW YORK in Fair Hearings as between the defendant THE CITY OF NEW YORK and social services benefit recipients.

8.    That at all times hereinafter mentioned, the Defendant CITY OF NEW YORK acted via its agency or subdivision, the Human Resources Administration/Department of Social Services of The City of New York (hereinafter referred to as the "Defendant").

## Summary of Plaintiffs' Contentions

9.    It is alleged that Defendant submitted, or caused to be submitted, Medicaid, Public Assistance, and Supplemental Nutrition Assistance Program (hereinafter referred to as "SNAP", and also known as "Food Stamps") claims to THE UNITED STATES OF AMERICA, which it knew or reasonably should have known were false. The basis for Defendant's knowledge of the falsity of these claims was information contained in Defendant's own files, and/or information readily accessible to Defendant, which demonstrated that the Recipients of said benefits were not indeed eligible, or were no longer

2

eligible or entitled, to receive same. Specifically, as will be demonstrated below, the Defendant falsely authorized and requested payment of Public Assistance, SNAP, and Medical Assistance benefits, substantial portions of which were funded by the UNITED STATES OF AMERICA. Since approximately 2004, Defendant's policies and practices have involved knowingly presenting or causing to be presented to the UNITED STATES OF AMERICA false claims for payment of federal funds in excess of the amounts that were allowed under the applicable federal and state statutes and regulations. It is further alleged that the Defendant created, made and/or presented false records or statements material to such false claims.

### The Programs

10.     That at all times hereinafter mentioned, Public Assistance, SNAP, and Medicaid were and are joint federal-state programs designed to help provide assistance to eligible low-income individuals. The Medicaid program was also designed to help provide assistance to eligible elderly and disabled persons.

11.     The State of New York has promulgated an extensive regulatory scheme governing the administration of its Public Assistance programs, the SNAP program, and the Medicaid program within the State of New York.

12.     The City of New York, through its Human Resources Administration (HRA) administers the Public Assistance, SNAP and Medicaid programs within its jurisdiction, the 5 counties which comprise the City of New York: New York, Kings, Bronx, Richmond, and Queens.

13.     That the federal "share" of Public Assistance and Medicaid benefits is approximately fifty per cent (50%).

14.     That the State "share" of Public Assistance and Medicaid benefits is approximately twenty-five per cent (25%).

15.     That the UNITED STATES OF AMERICA pays for fifty per cent (50%) of all Public Assistance and Medicaid benefits received by Recipients.

16.     That the State of New York pays for 25% of all Public Assistance and Medicaid benefits received by Recipients.

17.     The Supplemental Nutrition Assistance Program (SNAP) is entirely funded by THE UNITED STATES OF AMERICA.

18.     The State of New York, based upon information provided by THE CITY OF NEW YORK, and on behalf of THE CITY OF NEW YORK, typically presents claims for reimbursement of Public Assistance, SNAP, and Medicaid expenses to the UNITED STATES OF AMERICA.

19.     Defendant has caused the State of New York to submit false claims to the UNITED STATES OF AMERICA, which it knew or should have known were not properly compensable.

20.     That THE CITY OF NEW YORK has violated New York State and Federal laws and regulations concerning the presentation of said false claims.

21.     That THE CITY OF NEW YORK has falsely certified that said New York State and Federal laws and regulations had been complied with.

22.     That the representations made by THE CITY OF NEW YORK to the UNITED STATES OF AMERICA concerning the payment of Public Assistance, SNAP, and Medicaid benefits were a material and substantial factor in causing the UNITED STATES OF AMERICA to pay said benefits.

23.     That THE CITY OF NEW YORK expressly and falsely represented its compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the State of New York.

24.     That THE CITY OF NEW YORK impliedly and falsely represented its compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the State of New York.

25.     That THE CITY OF NEW YORK regularly and systematically authorized that Public Assistance, SNAP, and Medicaid benefits be paid to Recipients in violation of the State of New York and UNITED STATES OF AMERICA's Public Assistance, SNAP, and Medicaid regulations, and thus allowed certain Recipients to improperly receive Public Assistance, SNAP, and Medicaid benefits, despite their lack of eligibility.

26.     That THE CITY OF NEW YORK knowingly and wrongfully submitted such false claims for legally invalid political and/or economic reasons, in knowing, reckless disregard, and/or deliberate indifference to the rights of the UNITED STATES OF AMERICA to be free from having false claims made against it, all in contravention of applicable laws and regulations.

27.     Pursuant to 18 NYCRR 358-3.6, Aid To Continue status is granted to those Public Assistance, SNAP, and Medicaid Recipients who request a fair hearing to contest a notice of action by a Social Services District before the effective date of the action. The Aid To Continue status allows such Recipients to have their benefits continued unchanged pending the outcome of the fair hearing. In the event that the Recipients lose their fair hearings, the Defendant must recoup overpayments of assistance resulting from the Aid To Continue Status.

28.     However, at all times hereinafter mentioned, THE CITY OF NEW YORK systematically *failed to reduce and/or discontinue* the Recipients' Public Assistance and SNAP benefits to recover overpayments of assistance resulting from Aid To Continue status pending fair hearings, because said benefits would not ultimately be paid, in whole or in substantial part, by said Defendant.

29.     In addition, THE CITY OF NEW YORK systematically *failed to recertify* Recipients for continued eligibility for the Medicare Savings Program benefits, because said benefits would not ultimately be paid, in whole or in substantial part, by the Defendant.

30.     New York State Regulations specify certain mandated duties and responsibilities which require the Defendant to insure that only eligible individuals receive benefits to which they are legally entitled.

31.     THE CITY OF NEW YORK has knowingly, consistently, and habitually ignored and violated these Regulations, including but not limited to 18 NYCRR 352.31 and 18 NYCRR 360-2.2, which require it to reduce and/or discontinue the Recipients' Public Assistance and SNAP benefits to recover overpayments of assistance and to recertify Recipients for continued eligibility of the Medicare Savings Program benefits.

32.     That THE CITY OF NEW YORK, either directly or via the State of New York, submitted numerous claims to the UNITED STATES OF AMERICA which were misleading and/or tended to mislead the UNITED STATES OF AMERICA, in order to induce it to pay monies that should not have been paid had Defendant complied with applicable law.

33.     As the administrator of the Public Assistance programs, the SNAP program and the Medicaid program, the Defendant has the responsibility for determining initial eligibility for these programs as well as determining continuing eligibility for the programs.

34.     The Defendant has consistently and habitually ignored and violated the State regulations requiring it to determine continued eligibility for these programs, causing the continued authorization of Public Assistance, SNAP and Medicaid benefits for numerous Recipients who were ineligible to receive these benefits.

35.     That numerous claims for such benefits were then made, or caused to be made, knowingly, by Defendant to THE UNITED STATES OF AMERICA.

36.     That said claims were then paid by the UNITED STATES OF AMERICA to THE CITY OF NEW YORK, as reimbursement for amounts paid to Recipients of Public Assistance, SNAP, and Medicaid benefits who were in fact no longer legally eligible to receive said benefits.

37.     That the Defendant knew, or should have known, that said claims should not have been presented to THE UNITED STATES OF AMERICA, because said Recipients of Public Assistance, SNAP, and Medicaid benefits were in fact *not* eligible or entitled to receive such benefits.

38.     That THE UNITED STATES OF AMERICA made payments under the Public Assistance, SNAP, and Medicaid programs because of said false claims which were caused to be made by the Defendant.

39.     That the Defendant's failure to insure that only eligible individuals receive benefits to which they are legally entitled resulted in a failure to comply by Defendant with Federal and State law and regulations, as demonstrated more specifically in the following types of cases as set forth below.

7

**Case Type I: Defendant's Failure to Reduce Public Assistance and SNAP benefits to Recover Overpayments of Assistance Resulting From Aid to Continue Status Pending Fair Hearings.**

40.     At all times hereinafter mentioned, Section 106-b of the Social Services Law and 18 NYCRR 352.31(d) provide that Social Service Districts, including the HRA of the City of New York are required to take all necessary steps to correct any overpayment or underpayment of assistance to a Public Assistance recipient. Overpayments shall include payments made to an eligible person in excess of his/her needs and payments made to an ineligible person. In addition, overpayments shall include aid-continuing payments made to such person pending a fair hearing decision.

Further, Pursuant to 18 NYCRR 352.31(d), the Agency must recover the overpayment from:

"(1)    the assistance unit that was overpaid;

(2)     any assistance unit of which an adult member of the overpaid assistance unit subsequently has become a member; and

(3)     any adult individual member of the overpaid assistance unit, whether or not currently a recipient.

The term "adult" refers to any member of the assistance unit who, at the time the overpayment occurred, exceeds the age requirements of an eligible child. An eligible child is a child under age 18 (or under age 19 if he or she is a full-time student regularly attending a secondary school, or in the equivalent level of vocational or technical training). An eligible child who is a member of the assistance unit at the time the overpayment occurred must not be held liable for the recoupment or recovery of the overpayment if such individual, at any age, subsequently joins another assistance unit or ceases to be a recipient.

The proportion of the current assistance grant that must be deducted for recoupment is ten percent of the household's needs. If undue hardship is claimed and substantiated, the recoupment must not be less than five percent of the household's needs. For purposes of determining the amount to be

8

deducted from a Public Assistance grant, the household's needs include an allowance for recurring needs, the home energy and supplemental home energy allowances, the shelter allowance, any fuel for heating allowance, any personal needs allowance, any restaurant allowance, any allowances for chattel mortgages or conditional sales contracts, any pregnancy allowance and any water allowance. When the grant amount is less than the appropriate recoupment rate, the full grant must be recouped.  18 NYCRR 352.11; 18 NYCRR 352.31(d)."

41.    Upon information and belief, during the last ten years, it is conservatively estimated that in at least hundreds of thousands of cases, THE CITY OF NEW YORK determined, pursuant to applicable law and regulations, to discontinue or reduce Public Assistance and/or SNAP benefits to Recipients.

42.    In these instances, the Defendant then issued notices of discontinuance or reduction of the Recipients' Public Assistance and SNAP benefits, and the Recipients requested fair hearings to review the Defendant's determinations.

43.    Upon requesting a fair hearing, the Recipients each received Aid To Continue status pending the outcome of the fair hearings.  Hearings were then scheduled to be conducted by Hearing Officers of the OTDA pursuant to these requests.

44.    During the period of time from April of 2011 through March of 2014, Plaintiff TESSLER was assigned fifty Fair Hearing Calendars concerning hearings requested by Public Assistance and SNAP Recipients to contest determinations by the Defendant City of New York. In 334 cases, Recipients who received Aid To Continue status failed to appear for the scheduled hearings, and the Agency's determinations were affirmed by the Commissioner.

45.    It is conservatively estimated that at least one hundred such calendars are conducted by numerous OTDA Hearing Officers on a weekly basis.  Thus, it is conservatively estimated that in hundreds of thousands of cases since 2004, and in tens of thousands of cases

9

since 2011, Recipients who received Aid To Continue status failed to appear for the scheduled hearings, and the Agency's determinations were affirmed by the Commissioner.

46.    During the period of time from April of 2011 through March of 2014, Plaintiff TESSLER conducted hearings in cases where Recipients received Aid To Continue status, as a result of which twenty eight determinations were issued affirming the Agency's decisions. Attached to this complaint as Exhibit #1 is a list of the Fair Hearing numbers for these cases.

47.    It is conservatively estimated that in tens of thousands of cases since 2004 and thousands of cases since 2011 where Recipients received Aid To Continue status, hearings were conducted and determinations affirming the Agency's decisions were issued by the Commissioner.

48.    Therefore, the Public Assistance and SNAP benefits that these Recipients had received due to Aid To Continue status represented an overpayment of assistance.

49.    However, upon information and belief, in spite of being required to do so by the aforesaid Law and Regulations, the Defendant, as a matter of custom and practice, failed to even attempt to recoup the overpayments of assistance received due to Aid To Continue status, and failed to even issue notices of determinations to recoup these overpayments.

50.    Claims which included said overpayments, as will be described further below, were subsequently presented to the UNITED STATES OF AMERICA by the CITY OF NEW YORK, either directly or via the State of New York, and on each occasion of said presentment, represented a false claim pursuant to 31 USC 3729, et seq.

51.    It is alleged that the Defendant did not comply with the Law and the Regulations requiring it to recoup overpayments of assistance received due to Aid To Continue status, because of their knowing and/or intentional, and/or reckless disregard and/or deliberate

10

ignorance of their duty to recoup such overpayments, and also because the Defendant knew that these claims would ultimately be paid in whole or in substantial part by the UNITED STATES OF AMERICA and/or the State of New York, and thus cost the defendant CITY OF NEW YORK little to nothing in funds.

52.     That the above was a callous calculation by the Defendant, and resulted in false claims being submitted to the UNITED STATES OF AMERICA within said ten year period, to the detriment of the UNITED STATES OF AMERICA.

53.     As a result, it is conservatively estimated that tens of thousands of Public Assistance and SNAP Recipients received overpayments of Public Assistance and SNAP benefits, in violation of New York State and Federal Government regulations.

**Case Type II: Defendant's Failure to Recertify Medical Assistance Recipients for Continued Eligibility of the Medicare Savings Program Benefits**

54.     State governments have the option to buy low-income individuals into Medicare. Medicare Buy-In programs are available to pay Medicare Premiums and other medical expenses for certain low-income individuals. A person eligible to participate in the Medicare Buy-In Program is eligible to have Medicaid pay the appropriate Medicare premium(s) on their behalf and to have Medicaid pay deductible and coinsurance for all services offered under Medicare.

55.     Financial eligibility for participation in the Medicare Buy-In Program is determined according to SSI budgeting methodologies. See, 18 NYCRR 360-7.7; and 18 NYCRR 360-7.8.

56.     Section 360-2.2(e) of Title 18 NYCRR and Section 369-ee of the Social Services Law provide that the Agency must re-determine a Medical Assistance or Family Health Plus recipient's eligibility at least once every twelve months and whenever there is a change in the recipient's circumstances that may affect eligibility. With regard to Medicaid, but not Family Health Plus, the district may re-determine eligibility more frequently.

57.     However, upon information and belief, since 2004, the Agency has provided Medicare Savings Program benefits to more than one thousand Recipients without even attempting to re-determine their eligibility for these benefits. Attached to this complaint as Exhibit #2 are copies of emails by the Defendant's employees concerning these cases.

58.     It is alleged that the Defendant did not even attempt to recertify these Recipients, because of its knowing and/or intentional, and/or reckless disregard and/or deliberate ignorance of its duty to do so, and also because the Defendant knew that these claims would ultimately be paid by the UNITED STATES OF AMERICA and the State of New York, and cost the defendant CITY OF NEW YORK, little to nothing in funds.

59.     That the above was a callous calculation by THE CITY OF NEW YORK, and resulted in false claims submitted to the UNITED STATES OF AMERICA within said ten year period.

60.     As a result, it is conservatively estimated that more than one thousand Medicare Savings Program Recipients received their benefits without having to recertify their eligibility, in violation of New York State and Federal Government Regulations.

## As And For a First Cause of Action by Plaintiffs on behalf of

## themselves and on behalf of the UNITED STATES OF AMERICA

61.     That at all times herein mentioned, the Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented or caused to be presented, false claims to the United States of America for payment or approval of false or fraudulent claims, in violation of 31 USC 3729 (a)(1)(A).

62.     That at all times hereinafter mentioned, and for at least the past ten years, the Defendant presented false claims to the UNITED STATES OF AMERICA, representing Public Assistance, SNAP, and Medicaid claims on behalf of, upon information and belief, hundreds of thousands of persons.

63.     That at all times hereinafter mentioned, the defendant conspired to violate 31 USC 3729 (a)(1)(A), in violation of 3729 (a)(1)(C).

64.     That the presentation of said false claims to the UNITED STATES OF AMERICA caused the UNITED STATES OF AMERICA to suffer significant pecuniary losses.

## As And For a Second Cause of Action by Plaintiffs on behalf of themselves and on behalf of the UNITED STATES OF AMERICA

65.     That plaintiffs repeat, reiterate and re-allege each and every allegation as contained in the First Cause of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

66.     That at all times herein mentioned, the Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, made, used, or caused to be made or

used, or a false record or statement material to a false or fraudulent claim, in violation of 31 USC 3729 (a)(1)(B).

67.      That THE CITY OF NEW YORK used false records in order to induce the UNITED STATES OF AMERICA to pay false claims.

68.      That at all times hereinafter mentioned, the defendant conspired to violate 31 USC 3729 (a)(1)(B), in violation of  3729 (a)(1)(C).

69.      That the use of false records, as presented to the UNITED STATES OF AMERICA, caused the UNITED STATES OF AMERICA to suffer significant pecuniary losses.

## As And For a Third Cause of Action by Plaintiffs on behalf of themselves and on behalf of the UNITED STATES OF AMERICA

70.      That plaintiffs repeat, reiterate and re-allege each and every allegation as contained in the First and Second Causes of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

71.      That at all times hereinafter mentioned, Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, did make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the UNITED STATES OF AMERICA, or knowingly concealed or improperly avoided an obligation to pay or transmit money to the UNITED STATES OF AMERICA, in violation of 31 USC 3729 (a)(1)(G).

72.     That at all times hereinafter mentioned, the defendant conspired to violate 31 USC 3729 (a)(1)(G), in violation of 3729 (a)(1)(C).

73.     That as a result of the above, the UNITED STATES OF AMERICA was caused to suffer significant pecuniary losses.

WHEREFORE, plaintiffs, as indicated above, demand judgment against the Defendant CITY OF NEW YORK in the amount of Five Hundred Million Dollars ($500,000,000.00) for each of the First, Second, and Third Causes of Action, together with attorneys' fees, costs, disbursements, interest, statutory damages, and exemplary damages, including but not limited to treble damages and fines as the law allows, including an $11,000 penalty per violation of the False Claims Act, 31 USC 3729 through 3733.

Dated: Staten Island, New York

October 5, 2015

Yours, etc.,

PAUL C. BIERMAN, ESQ.,

LAW OFFICE OF PAUL C. BIERMAN

Counsel for Plaintiff TESSLER

299 Broadway, Suite 1605

New York, New York 10007

(917) 697-8938

15

RICHARD B. ANCOWITZ, ESQ.

LAW OFFICE OF RICHARD B. ANCOWITZ

Counsel for Plaintiff GONZALEZ

21 Everette Road Extension

Albany, New York 12205

(518) 489-1098


SANFORD ROSENBLUM, ESQ.

Co-counsel for Plaintiff GONZALEZ

LAW OFFICE OF SANFORD ROSENBLUM

110 Great Oaks Blvd.

Albany, N.Y. 12203

(518) 213-3012

# EXHIBIT #1

**Fair Hearings Resulting in Determinations in Favor of the Agency Where Aid To Continue Had To Be Recouped:**

**FH#** 5712068R
**FH#** 5731490N
**FH#** 5740146M
**FH#** 5747751Q
**FH#** 5748601Z
**FH#** 5767031N
**FH#** 5772790Z
**FH#** 5779072J
**FH#** 5780366Q
**FH#** 5780624K
**FH#** 5782363L
**FH#** 5789127K
**FH#** 5797604R
**FH#** 5799295Y
**FH#** 5812529P
**FH#** 5812833L
**FH#** 5813486P
**FH#** 5862343K
**FH#** 5897202K
**FH#** 5905592H
**FH#** 5936786Q
**FH#** 6025502R
**FH#** 6037166K
**FH#** 6085932N
**FH#** 6155488Q
**FH#** 6170233K
**FH#** 6273101R
**FH#** 6621589Y

# EXHIBIT #2

## Gonzalez, Felix

| | |
|---|---|
| **From:** | Bien-Aime, Philipe |
| **Sent:** | Wednesday, November 20, 2013 9:43 AM |
| **To:** | Gonzalez, Felix |
| **Subject:** | FW: MSP |
| **Attachments:** | OHIP-0003.pdf; MSP Cases with DNR 99999999 - 050303 v1.xlsx |

**Importance:**     High

**From:** Cummings, Vernesa
**Sent:** Monday, August 26, 2013 10:58 AM
**To:** Adusei, Issabella; Bien-Aime, Philipe; Gaskins, Debra; Kalvin, Silvia; Thomas, Glenroy
**Subject:** FW: MSP
**Importance:** High

FYI

Please read the below correspondence. Please review the attached list for cases that may appear on your calendar. These cases **can not** be sent to **conference or withdrawn**.

Thanks for cooperation in this matter.

---

**From:** Flores, Madelyn
**Sent:** Monday, August 26, 2013 10:04 AM
**To:** Cummings, Vernesa; Durio, Maritza; Guy, Sharon; Lipari, Vito; Miller, Marcell; Milligan, Sanquanette; Thomas, Glenroy
**Subject:** FW: MSP

This is a reminder. These cases are now showing up on the calendars. Cases that appear on the attached list should not be referred to Conference. Thank you.

---

**From:** Lopez-Flores, Nadine
**Sent:** Monday, July 01, 2013 2:04 PM
**To:** Flores, Madelyn; Thai, Lan; Spegal, David
**Subject:** FW: MSP

Attached you will find is a list of 1060 cases and the notice sent to them closing the MSP services. The State ordered HRA to close them down. They represent MSP clients that have not had a renewal since 2004 many of them are no longer eligible due to the COLA increases since 2004. The cases are still open in WMS but the accretion is closed on emendny. Effective 5/13.

*Conference Unit*: Please make staff aware that these cases are open in WMS. It is only when they check emedny where they will see the MSP case closed effective 5/13. **To date we have been ordered not to resolve these cases until further notice**

1

**_ATC Unit_**: Please ensure staff members complete the accretion into emedny going retro to the 5/1/13 closing. Let staff know they must go by Emedny not WMS.


**_FH Rep Unit_**: These cases **cannot** go to conference nor can they be withdrawn until further direction from the State and OLA. The FH Rep is to allow the commissioner to make the determination.


Thanking you all in advance for your cooperation concerning these cases. As I get further direction I will share with you and your staff.

**Nadine Lopez-Flores,**
**MICSA Fair Hearing Divisional Director**
**111 Livingston St**
**Brooklyn, NY 11201**
**718 637-2500**
**718 722-7392-fax**
If you have received this electronic mail transmission in error, delete it without copying or forwarding it and notify the sender of the error.

---

**From:** Brown, Bernadette
**Sent:** Monday, July 01, 2013 12:08 PM
**To:** Lopez-Flores, Nadine
**Cc:** Raimouny, Lyn
**Subject:** FW: MSP

Per our conversation, attached find the notice sent to clients regarding closing of MSP benefits and the list of all those that were affected.  If you have any other question please let me know.

Bernadette Brown
Divisional Director of Client Services
785 Atlantic Avenue, 5th Fl
Brooklyn, NY 11238
Office # 929 221-0838
Fax # 718 636-7720

---

**From:** Lewis, Ayana
**Sent:** Monday, July 01, 2013 12:03 PM
**To:** Brown, Bernadette
**Subject:**