UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, ex.rel. AKIVA TESSLER and FELIX GONZALEZ | **No. 14 CV 6455** |
| Plaintiffs, | **SECOND AMENDED COMPLAINT** |
| against- | **FURMAN, J.** |
| THE CITY OF NEW YORK, | **Jury Trial Demanded** |
| Defendant, | |

The individual plaintiffs herein, as relators, by their attorneys, the Law Office of Paul C. Bierman, the Law Office of Richard B. Ancowitz, and the Law Office of Sanford Rosenblum, complaining of the Defendant, allege the following:

1.     That at all times hereinafter mentioned, the Defendant was and is a municipality organized pursuant to the laws of New York State.

2.     This Court has jurisdiction over the claims brought herein pursuant to 31 USC 3729 through 3733, and in particular 31 USC 3730 (a), as well as 28 USC 1345.

3.     Venue lies in this District pursuant to 31 USC 3732 (a) and 28 USC 1391 (b) and (c), because the Defendant is a municipality situated within this District, and because a substantial part of the acts of the defendant as set forth herein occurred within this District.

4.     Plaintiff AKIVA TESSLER is a former Hearing Officer (also commonly known and referred to as "Administrative Law Judge") employed by the State of New York, Office of Temporary Disability Assistance (hereinafter "OTDA") from January of 2011 through April of 2014.

5.     Among TESSLER's chief responsibilities in said position were to conduct Fair Hearings as between the Defendant THE CITY OF NEW YORK and social service benefit recipients, and to draft recommended decisions based on the applicable Law, the Regulations, and the factual record at the hearing.

6.     Plaintiff FELIX GONZALEZ was an employee of the Human Resources Administration of THE CITY OF NEW YORK, with a Job Title of Supervisor II, and was employed therein in said position from July 2012 through July 2014.

7.     Among GONZALEZ' chief responsibilities in said position were to advocate and advance the interests and position of THE CITY OF NEW YORK in Fair Hearings as between the defendant THE CITY OF NEW YORK and social services benefit recipients.

8.     That at all times hereinafter mentioned, the Defendant CITY OF NEW YORK acted via its agency or subdivision, the Human Resources Administration/Department of Social Services of The City of New York (hereinafter referred to as the "Defendant").

### Summary of Plaintiffs' Contentions

9.     It is alleged that Defendant submitted, or caused to be submitted, Medicaid, Public Assistance, and Supplemental Nutrition Assistance Program (hereinafter referred to as "SNAP", and also known as "Food Stamps") claims to THE UNITED STATES OF AMERICA, which it knew or reasonably should have known were false.  The basis for Defendant's knowledge of the falsity of these claims was information contained in Defendant's own files, and/or information readily accessible to Defendant, which demonstrated that the Recipients of said benefits were not indeed eligible, or were no longer eligible or entitled, to receive same.  Specifically, as will be demonstrated below, the Defendant falsely authorized and requested payment of Public Assistance, SNAP, and Medical Assistance benefits, substantial portions of which were funded by the UNITED

STATES OF AMERICA. Since approximately 2004, Defendant's policies and practices have involved knowingly presenting or causing to be presented to the UNITED STATES OF AMERICA false claims for payment of federal funds in excess of the amounts that were allowed under the applicable federal and state statutes and regulations. It is further alleged that the Defendant created, made and/or presented false records or statements material to such false claims.

### The Programs

10.     That at all times hereinafter mentioned, Public Assistance, SNAP, and Medicaid were and are joint federal-state programs designed to help provide assistance to eligible low-income individuals. The Medicaid program was also designed to help provide assistance to eligible elderly and disabled persons.

11.     The State of New York has promulgated an extensive regulatory scheme governing the administration of its Public Assistance programs, the SNAP program, and the Medicaid program within the State of New York.

12.     The City of New York, through its Human Resources Administration (HRA) administers the Public Assistance, SNAP and Medicaid programs within its jurisdiction, the 5 counties which comprise the City of New York: New York, Kings, Bronx, Richmond, and Queens.

13.     That the federal "share" of Public Assistance and Medicaid benefits is approximately fifty per cent (50%).

14.     That the State "share" of Public Assistance and Medicaid benefits is approximately twenty-five per cent (25%).

15.     That the UNITED STATES OF AMERICA pays for fifty per cent (50%) of all Public Assistance and Medicaid benefits received by Recipients.

16.     That the State of New York pays for 25% of all Public Assistance and Medicaid benefits received by Recipients.

17.     The Supplemental Nutrition Assistance Program (SNAP) is entirely funded by THE UNITED STATES OF AMERICA.

18.     The State of New York, based upon information provided by THE CITY OF NEW YORK, and on behalf of THE CITY OF NEW YORK, typically presents claims for reimbursement of Public Assistance, SNAP, and Medicaid expenses to the UNITED STATES OF AMERICA.

19.     Defendant has caused the State of New York to submit false claims to the UNITED STATES OF AMERICA, which it knew or should have known were not properly compensable.

20.     That THE CITY OF NEW YORK has violated New York State and Federal laws and regulations concerning the presentation of said false claims.

21.     That THE CITY OF NEW YORK has falsely certified that said New York State and Federal laws and regulations had been complied with.

22.     That the representations made by THE CITY OF NEW YORK to the UNITED STATES OF AMERICA via the State of New York concerning the payment of Public Assistance, SNAP, and Medicaid benefits were a material and substantial factor in causing the UNITED STATES OF AMERICA to pay said benefits.

23.     That THE CITY OF NEW YORK expressly and falsely represented its compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the State of New York.

4

24.     That THE CITY OF NEW YORK impliedly and falsely represented its compliance with fundamental procedural requirements governing the submission of claims to the UNITED STATES OF AMERICA via the State of New York.

25.     That THE CITY OF NEW YORK regularly and systematically authorized that Public Assistance, SNAP, and Medicaid benefits be paid to Recipients in violation of the State of New York and UNITED STATES OF AMERICA's Public Assistance, SNAP, and Medicaid regulations, and thus allowed certain Recipients to improperly receive Public Assistance, SNAP, and Medicaid benefits, despite their lack of eligibility.

26.     That THE CITY OF NEW YORK knowingly and wrongfully caused the submission of such false claims for legally invalid political and/or economic reasons, in knowing, reckless disregard, and/or deliberate indifference to the rights of the UNITED STATES OF AMERICA to be free from having false claims made against it, all in contravention of applicable laws and regulations.

27.     Pursuant to 18 NYCRR 358-3.6, Aid To Continue status is granted to those Public Assistance, SNAP, and Medicaid Recipients who request a fair hearing to contest a notice of action by a Social Services District before the effective date of the action. The Aid To Continue status allows such Recipients to have their benefits continued unchanged pending the outcome of the fair hearing. In the event that the Recipients lose their fair hearings, the Defendant must recoup overpayments of assistance resulting from the Aid To Continue Status.

28.     However, at all times hereinafter mentioned, THE CITY OF NEW YORK systematically *failed to reduce and/or discontinue* the Recipients' Public Assistance and SNAP benefits to recover overpayments of assistance resulting from Aid To Continue status

5

pending fair hearings, because said benefits would not ultimately be paid, in whole or in substantial part, by said Defendant.

29.     In addition, THE CITY OF NEW YORK systematically *failed to recertify* Recipients for continued eligibility for the Medicare Savings Program benefits, because said benefits would not ultimately be paid, in whole or in substantial part, by the Defendant.

30.     New York State Regulations specify certain mandated duties and responsibilities which require the Defendant to insure that only eligible individuals receive benefits to which they are legally entitled.

31.     THE CITY OF NEW YORK has knowingly, consistently, and habitually ignored and violated these Regulations, including but not limited to 18 NYCRR 352.31 and 18 NYCRR 360-2.2, which require it to reduce and/or discontinue the Recipients' Public Assistance and SNAP benefits to recover overpayments of assistance and to recertify Recipients for continued eligibility of the Medicare Savings Program benefits.

32.     That THE CITY OF NEW YORK, either directly or via the State of New York, submitted numerous claims to the UNITED STATES OF AMERICA which were misleading and/or tended to mislead the UNITED STATES OF AMERICA, in order to induce it to pay monies that should not have been paid had Defendant complied with applicable law.

33.     As the administrator of the Public Assistance programs, the SNAP program and the Medicaid program, the Defendant has the responsibility for determining initial eligibility for these programs as well as determining continuing eligibility for the programs.

34.     The Defendant has consistently and habitually ignored and violated the State regulations requiring it to determine continued eligibility for these programs, causing the continued authorization of Public Assistance, SNAP and Medicaid benefits for numerous Recipients who were ineligible to receive these benefits.

35.    That numerous claims for such benefits were then made, or caused to be made, knowingly, by Defendant to THE UNITED STATES OF AMERICA.

36.    That said claims were then paid by the UNITED STATES OF AMERICA to THE CITY OF NEW YORK via the STATE OF NEW YORK, as reimbursement for amounts paid to Recipients of Public Assistance, SNAP, and Medicaid benefits who were in fact no longer legally eligible to receive said benefits.

37.    That the Defendant knew, or should have known, that said claims should not have been presented to THE UNITED STATES OF AMERICA, because said Recipients of Public Assistance, SNAP, and Medicaid benefits were in fact *not* eligible or entitled to receive such benefits.

38.    That THE UNITED STATES OF AMERICA made payments under the Public Assistance, SNAP, and Medicaid programs because of said false claims which were caused to be made by the Defendant.

39.    That the Defendant's failure to insure that only eligible individuals receive benefits to which they are legally entitled resulted in a failure to comply by Defendant with Federal and State law and regulations, as demonstrated more specifically in the following types of cases as set forth below.

**Case Type I:  Defendant's Failure to Reduce Public Assistance and SNAP benefits to Recover Overpayments of Assistance Resulting From Aid to Continue Status Pending Fair Hearings.**

40.    At all times hereinafter mentioned, Section 106-b of the Social Services Law and 18 NYCRR 352.31(d) provided that Social Service Districts, including the HRA of the City of

New York are required to take all necessary steps to correct any overpayment or underpayment of assistance to a Public Assistance recipient. Overpayments shall include payments made to an eligible person in excess of his/her needs and payments made to an ineligible person. In addition, overpayments shall include aid-continuing payments made to such person pending a fair hearing decision.

Further, Pursuant to 18 NYCRR 352.31(d), the Agency must recover the overpayment from:

"(1)    the assistance unit that was overpaid;

(2)    any assistance unit of which an adult member of the overpaid assistance unit subsequently has become a member; and

(3)    any adult individual member of the overpaid assistance unit, whether or not currently a recipient.

The term "adult" refers to any member of the assistance unit who, at the time the overpayment occurred, exceeds the age requirements of an eligible child. An eligible child is a child under age 18 (or under age 19 if he or she is a full-time student regularly attending a secondary school, or in the equivalent level of vocational or technical training). An eligible child who is a member of the assistance unit at the time the overpayment occurred must not be held liable for the recoupment or recovery of the overpayment if such individual, at any age, subsequently joins another assistance unit or ceases to be a recipient.

The proportion of the current assistance grant that must be deducted for recoupment is ten percent of the household's needs. If undue hardship is claimed and substantiated, the recoupment must not be less than five percent of the household's needs. For purposes of determining the amount to be deducted from a Public Assistance grant, the household's needs include an allowance for recurring needs, the home energy and supplemental home energy allowances, the shelter allowance, any fuel for heating allowance, any personal needs allowance, any restaurant allowance, any allowances for chattel mortgages or conditional sales contracts, any pregnancy allowance and any water allowance. When the grant amount is less than the appropriate recoupment rate, the full grant must be recouped. 18 NYCRR 352.11; 18 NYCRR 352.31(d)."

8

41.     During the last ten years, it is conservatively estimated that in at least hundreds of thousands of cases, THE CITY OF NEW YORK determined, pursuant to applicable law and regulations, to discontinue or reduce Public Assistance and/or SNAP benefits to Recipients.

42.     In these instances, the Defendant then issued notices of discontinuance or reduction of the Recipients' Public Assistance and SNAP benefits, and the Recipients requested fair hearings to review the Defendant's determinations.

43.     Upon requesting a fair hearing, the Recipients each received Aid To Continue status pending the outcome of the fair hearings.  Hearings were then scheduled to be conducted by Hearing Officers of the OTDA pursuant to these requests.

44.     During the period of time from April of 2011 through March of 2014, Plaintiff TESSLER was assigned fifty Fair Hearing Calendars concerning hearings requested by Public Assistance and SNAP Recipients to contest determinations by the Defendant City of New York. In 334 cases, Recipients who received Aid To Continue status failed to appear for the scheduled hearings, and the Agency's determinations were affirmed by the Commissioner.

45.     It is conservatively estimated that at least one hundred such calendars are conducted by numerous OTDA Hearing Officers on a weekly basis. Thus, it is conservatively estimated that in hundreds of thousands of cases since 2004, and in tens of thousands of cases since 2011, Recipients who received Aid To Continue status failed to appear for the scheduled hearings, and the Agency's determinations were affirmed by the Commissioner.

46.     During the period of time from April of 2011 through March of 2014, Plaintiff TESSLER conducted hearings in cases where Recipients received Aid To Continue status, as a result of which twenty eight determinations were issued affirming the Agency's decisions. Attached to this complaint as Exhibit #1 is a list of the Fair Hearing numbers for these cases.

9

47.     It is conservatively estimated that in tens of thousands of cases since 2004 and thousands of cases since 2011 where Recipients received Aid To Continue status, hearings were conducted and determinations affirming the Agency's decisions were issued by the Commissioner.

48.     Therefore, the Public Assistance and SNAP benefits that these Recipients had received due to Aid To Continue status represented an overpayment of assistance.

49.     However, in spite of being required to do so by the aforesaid Law and Regulations, the Defendant, as a matter of custom and practice, failed to even attempt to recoup the overpayments of assistance received due to Aid To Continue status, and failed to even issue notices of determinations to recoup these overpayments.

50.     In conducting the fifty calendars, Plaintiff Tessler observed that the custom and practice of the Defendant was not to attempt to recoup overpayments of assistance received due to Aid To Continue status.

51.     In addition, the database of OTDA fair hearing determinations for the period from 2006 to April of 2014 discloses less than three hundred fair hearings concerning the issue of recoupment of overpayments of assistance received due to Aid To Continue status.  In stark contrast, this database discloses hundreds of thousands of fair hearings during the same period of time on other issues concerning Public Assistance and SNAP benefit determinations by the Defendant.

52.     Furthermore, employees of the Defendant who represented the Defendant at fair hearings acknowledged to Plaintiff Tessler that the Defendant customarily failed to recoup these overpayments.

53.     Claims which included said overpayments, as will be described further below, were subsequently presented to the UNITED STATES OF AMERICA by the CITY OF NEW

YORK, either directly or via the State of New York, and on each occasion of said presentment, represented a false claim pursuant to 31 USC 3729, et seq.

54.     It is alleged that the Defendant did not comply with the Law and the Regulations requiring it to recoup overpayments of assistance received due to Aid To Continue status, because of their knowing and/or intentional, and/or reckless disregard and/or deliberate ignorance of their duty to recoup such overpayments, and also because the Defendant knew that these claims would ultimately be paid in whole or in substantial part by the UNITED STATES OF AMERICA and/or the State of New York, and thus cost the defendant CITY OF NEW YORK little to nothing in funds.

55.     That the above was a callous calculation by the Defendant, and resulted in false claims being submitted to the UNITED STATES OF AMERICA within said ten year period, to the detriment of the UNITED STATES OF AMERICA.

56.     As a result, it is conservatively estimated that tens of thousands of Public Assistance and SNAP Recipients received overpayments of Public Assistance and SNAP benefits, in violation of New York State and Federal Government regulations.

57.     Temporary Assistance for Needy Families (hereinafter "TANF") is the program funded by the UNITED STATES OF AMERICA and run by the States that provides Public Assistance to low-income parents and their children.    The TANF program replaced the Aid to Families with Dependent Children ("AFDC") program, which had provided cash welfare to poor families with children.

58.     TANF is administered by the Office of Family Assistance of the Administration for Children and Families ("ACF") within the Department of Health and Human Services ("HHS").

59.     Under TANF, the UNITED STATES OF AMERICA provides a block grant to the States, which use the funds to operate their own programs.  In order to receive the funds, the States must also spend their own funds on programs for needy families, which is known as the "maintenance of effort" ("MOE") requirement.

60.     The New York State TANF program commingles UNITED STATES OF AMERICA and State funds so that the program is subject to UNITED STATES OF AMERICA laws and requirements.   Thus, the State of New York and its local district offices, including the Defendant herein, must comply with federal requirements in determining and re-determining eligibility and payment amounts.

61.     UNITED STATES OF AMERICA regulations (45 CFR 92.11) require the States to submit plans to the UNITED STATES OF AMERICA prior to receiving TANF grants. The regulations specify that in each plan the State will include an assurance that the State shall comply with all applicable Federal statutes and regulations in effect with respect to the periods for which it receives grant funding.

62.     UNITED STATES OF AMERICA regulations (45 CFR 233.20) require the States to recover overpayments of assistance, including overpayments resulting from assistance paid pending hearing decisions.

63.     At all times heretofore and hereinafter mentioned, the State of New York submitted TANF plans to the UNITED STATES OF AMERICA, which assured the UNITED STATES OF AMERICA that the State of New York shall comply with all applicable Federal statutes and regulations in effect at the time in question, including the regulations concerning overpayments and recoupments.

12

64.     In addition, States participating in the TANF program must submit required data and financial reports about how the funds are spent, including Form SF-424M, Form ACF-196, Form ACF-199, Form ACF-204, and Form SF-425.

65.     Form SF-424M is the mandatory Application for Federal Assistance that is submitted annually to the UNITED STATES OF AMERICA by New York State. This form includes the following certification: "By signing this application, I certify (1) to the statements contained in the list of certifications and (2) that the statements herein are true, complete and accurate to the best of my knowledge. I also provide the required assurances and agree to comply with any resulting terms if I accept an award. I am aware that any false, fictitious, or fraudulent statements or claims may subject me to criminal, civil, or administrative penalties".

66.     UNITED STATES OF AMERICA regulations (45 CFR 265.3) require the States to file a quarterly TANF Financial Report (Form ACF-196), wherein each State is required to file quarterly expenditure data on its use of federal TANF funds, State TANF expenditures, and State expenditures of MOE funds in separate State programs. The regulations require this data to be collected on a monthly basis and to be reported on a quarterly basis.

67.     In addition, UNITED STATES OF AMERICA regulations (45 CFR 265.3) require the States to file a quarterly TANF Data Report (Form ACF-199), wherein each State is required to file information on families receiving TANF assistance, including the amount of assistance received. The regulations require this data to be collected on a monthly basis and to be reported on a quarterly basis.

68.     Form ACF-204 is the annual MOE report submitted by the States. This form is used to collect information about programs operated by States in association with their TANF programs. All State expenditures claimed towards their MOE requirements must meet all

13

applicable MOE requirements.  This form includes the following certification: "This certifies that all families for which the State claims MOE expenditures for the fiscal year meet the State's criteria for "eligible families".

69.     Furthermore, States are required to report on a quarterly basis the receipts and expenditures of Federal funds using Form SF-425 (which replaced Form SF-269), also known as the Federal Financial Report ("FFR").

70.     In the latter form the States expressly certify that the disbursements, expenditures, and cash receipts are for the purposes and intent set forth in the award documents.

71.     The SNAP program is funded by the UNITED STATES OF AMERICA's Department of Agriculture's Food and Nutrition Service ("FNS").

72.     UNITED STATES OF AMERICA regulations (7 CFR 273.15) require States to recover overpayments of SNAP assistance resulting from assistance paid pending hearing decisions.

73.     UNITED STATES OF AMERICA regulations (7 CFR 272.2) require States to submit the State Plan of Operation, which must be approved by FNS.  The basic components of the Plan are the Federal-State Agreement, the Budget Projection Statement, and the Program Activity Statement.

74.     The Federal-State Agreement is the legal agreement between New York State and the Department of Agriculture wherein New York State agreed to operate the SNAP program and to administer it in accordance with the Food Stamp Act of 1977 as amended, and the regulations issued pursuant to the Act.  The Budget Projection Statement (Form FNS-366A) and the Program Activity Statement (Form FNS-366B) are required to be filed on an annual basis.

75.     UNITED STATES OF AMERICA regulations (7 CFR 272.2) specify that the Budget Projection Statement shall be submitted annually and updated as necessary through the year, that it shall contain projections for each quarter of the next Federal fiscal year, and that it project the total costs for major areas of program operations.  In conjunction with the Budget Projection Statement, FNS requires States to report expenditures using Form SF-425 (which replaced Form SF-269), also known as the Federal Financial Report ("FFR").

76.     In the latter form the States are required to report quarterly the receipts and expenditures of Federal funds, and they certify that the disbursements, expenditures, and cash receipts are for the purposes and intent set forth in the award documents.

77.     The SNAP statute and regulations permit FNS to recover from a State benefits that were paid out due to negligence or fraud, and FNS can terminate funding (7 U.S.C. § 2020(g) and 7 CFR 276.3(a).

78.     Based on the express and implicit certifications made by New York State at all times at issue herein, the UNITED STATES made block grants under the TANF program to New York State and funded New York State's SNAP program.

79.     During all times relevant herein, New York State had, and continues to have, an electronic record system – Welfare Management System ("WMS") - to process authorizations and payments for services.  The New York State Office of Temporary and Disability Assistance ("OTDA") designed, implemented, and maintains WMS.  WMS consists of two application subsystems – "Upstate", which is used to maintain the records of clients residing in counties outside New York City, and "New York City", which contains the data of clients who are residents of New York City.  In New York City, the Defendant administers WMS.

80.     Defendant authorizes persons to receive benefits under the TANF and SNAP programs on at least a monthly basis, and New York State obtains from the the Defendant's

authorization lists the information necessary for its electronic system to process such authorizations and payments, including whether or not a person has been authorized to receive Public Assistance and SNAP benefits, the amounts of the benefits authorized, and the duration of such authorization. New York State relies directly on this information, received exclusively from the Defendant's authorization lists, to determine whether to authorize the disbursement of TANF and SNAP funds to vendors for serving benefit recipients in New York City and the amounts of such disbursements. Thus, the Defendant's authorizations, as reflected in its authorization lists, determine whether New York State pays out, or approves the disbursement of, or draws down on letters of credit for, TANF and SNAP funds to vendors and the amount of that payout, disbursement, or drawdown.

81.     Based on the express and implicit certifications made by New York State, the UNITED STATES paid, or approved the disbursement of, or issued letters of credit for the drawdown of, TANF and SNAP program funds for recipients in New York City to the State's account.

82.     However, since 2004 the Defendant (a local district of New York State) authorized tens of thousands of persons (a sample of whose cases are specified in Exhibit #1) to receive Public Assistance and SNAP benefits in violation of New York State and Federal Government statutes and regulations concerning overpayments of assistance, and submitted false authorization lists to New York State on at least a monthly basis from 2004 to at least April of 2014 (and, upon information and belief, to the present time). This conduct by the Defendant caused New York State to present false TANF plans to the UNITED STATES, false Form SF-424M on an annual basis from 2004 to at least 2014, false Form ACF-196 on a quarterly basis from 2004 to 2014, false Form ACF-199 on a quarterly basis from 2004 to 2014, false Form ACF-204 on an annual basis from 2004 to 2014, false Budget Projection Statements on

16

an annual basis from 2004 to 2014, and false Federal Financial Reports on a quarterly basis from 2004 to 2014. The Defendant never corrected these false reports.

**Case Type II: Defendant's Failure to Recertify Medical Assistance Recipients for Continued Eligibility of the Medicare Savings Program Benefits**

83.     State governments have the option to buy low-income individuals into Medicare. Medicare Buy-In programs are available to pay Medicare Premiums and other medical expenses for certain low-income individuals. A person eligible to participate in the Medicare Buy-In Program is eligible to have Medicaid pay the appropriate Medicare premium(s) on their behalf and to have Medicaid pay deductible and coinsurance for all services offered under Medicare.

84.     Financial eligibility for participation in the Medicare Buy-In Program is determined according to SSI budgeting methodologies. See, 18 NYCRR 360-7.7; and 18 NYCRR 360-7.8.

85.     Section 360-2.2(e) of Title 18 NYCRR and Section 369-ee of the Social Services Law provide that the Agency must re-determine a Medical Assistance or Family Health Plus recipient's eligibility at least once every twelve months and whenever there is a change in the recipient's circumstances that may affect eligibility. With regard to Medicaid, but not Family Health Plus, the district may re-determine eligibility more frequently.

86.     Furthermore, UNITED STATES OF AMERICA regulations (42 CFR 435.916) require the States to re-determine the eligibility of Medicaid beneficiaries at least every twelve months.

17

87.     However, since 2004, the Agency has provided Medicare Savings Program benefits to more than one thousand Recipients without even attempting to re-determine their eligibility for these benefits. Attached to this complaint as Exhibit #2 are copies of emails by the Defendant's employees concerning these cases and the list of the cases in question.

88.     It is alleged that the Defendant did not even attempt to recertify these Recipients for a period of ten years because of its knowing and/or intentional, and/or reckless disregard and/or deliberate ignorance of its duty to do so, and also because the Defendant knew that these claims would ultimately be paid by the UNITED STATES OF AMERICA and the State of New York, and cost the defendant CITY OF NEW YORK, little to nothing in funds.

89.     That the above was a callous calculation by THE CITY OF NEW YORK, and resulted in false claims submitted to the UNITED STATES OF AMERICA within said ten year period.

90.     As a result, it is conservatively estimated that more than one thousand Medicare Savings Program Recipients received their benefits for ten years without having to recertify their eligibility, in violation of New York State and Federal Government Regulations.

91.     Although the Defendant contracts with vendors who provide Medicaid services in New York City, the Defendant does not process the payments for the vendors. Instead, vendors receive Medicaid payments for authorized services from the New York State's Department of Health ("DOH") through a fiscal intermediary.

92.     During all relevant times, DOH has used one of two electronic record systems – WMS and eMedNY – to process authorizations and payments for services. DOH obtains from the Defendant lists of persons authorized to receive Medicare Savings Program benefits on at least a monthly basis, and it obtains from the Defendant's lists the information necessary for its electronic system to process such authorizations and payments, including whether or

18

not a person has been authorized to receive Medicare Savings Program services, the level of the services authorized, and the duration of such authorization. DOH relies directly on this information, received exclusively from the Defendant's authorization lists, to determine whether to disburse Medicaid funds to vendors for serving patients in New York City and the amounts of such disbursements. Thus, the Defendant's authorizations, as reflected in its authorization lists, determine whether DOH pays out Medicaid funds to vendors and the amount of that disbursement.

93.     The Medicaid program is funded by the Centers for Medicare and Medicaid Services ("CMS") within HHS.  To obtain the federal share of Medicare Buy-In program expenditures, New York State submits, on a quarterly basis, a Quarterly Medicaid Statement of Expenditures (Form "CMS-64") to CMS.  One of the services claimed on this form by New York State are the Medicaid Payments for the Medicare Buy-In program.

94.     Under federal rules and regulations, the State is permitted to seek the federal share only of those Medicare Buy-In program expenditures that had been incurred in accordance with applicable state and local statutes and regulations.  Furthermore, in each CMS-64 submitted at all times at issue herein, New York State expressly certified to the UNITED STATES OF AMERICA that the "report only includes expenditures … that are allowable in accordance with applicable implementing federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary…".

95.     Based on the express and implicit certifications made by New York State, the UNITED STATES paid or approved the federal share of New York's Medicare Buy-In program expenditures, including Medicare Buy-In program expenditures for recipients in New York City, to the State's Medicaid account.

19

96.     However, since 2004 the Defendant (a local district of New York State) authorized over a thousand persons (whose cases are specified in Exhibit #2) to receive Medicare Buy-In program benefits without re-determining their eligibility for ten years, and submitted false authorization lists to New York State on at least a monthly basis from 2004 to 2013. This conduct by the Defendant caused New York State to present false CMS-64 forms to the UNITED STATES on a quarterly basis from 2004 to 2013.

### As And For a First Cause of Action by Plaintiffs on behalf of
### themselves and on behalf of the UNITED STATES OF AMERICA

97.     That at all times herein mentioned, the Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, presented or caused to be presented, false claims to the United States of America for payment or approval of false or fraudulent claims, in violation of 31 USC 3729 (a)(1)(A).

98.     That at all times hereinafter mentioned, and for at least the past ten years, the Defendant presented or caused to be presented false claims to the UNITED STATES OF AMERICA, representing Public Assistance, SNAP, and Medicaid claims on behalf of tens of thousands of persons.

99.     That at all times hereinafter mentioned, the Defendant conspired to violate 31 USC 3729 (a)(1)(A), in violation of 3729 (a)(1)(C).

100.    That the presentation of said false claims to the UNITED STATES OF AMERICA caused the UNITED STATES OF AMERICA to suffer significant pecuniary losses.

### As And For a Second Cause of Action by Plaintiffs on behalf of
### themselves and on behalf of the UNITED STATES OF AMERICA

101.    That plaintiffs repeat, reiterate and re-allege each and every allegation as contained in the First Cause of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

102.    That at all times herein mentioned, the Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, made, used, or caused to be made or used, or a false record or statement material to a false or fraudulent claim, in violation of 31 USC 3729 (a)(1)(B).

103.    That THE CITY OF NEW YORK used false records in order to induce the UNITED STATES OF AMERICA to pay false claims.

104.    That at all times hereinafter mentioned, the defendant conspired to violate 31 USC 3729 (a)(1)(B), in violation of 3729 (a)(1)(C).

105.    That the use of false records, as presented to the UNITED STATES OF AMERICA, caused the UNITED STATES OF AMERICA to suffer significant pecuniary losses.

### As And For a Third Cause of Action by Plaintiffs on behalf of themselves and on behalf of the UNITED STATES OF AMERICA

106.    That plaintiffs repeat, reiterate and re-allege each and every allegation as contained in the First and Second Causes of Action of the within Complaint, with the same force and effect as though each were more fully set forth at length herein.

107.    That at all times hereinafter mentioned, Defendant did knowingly, or acting with deliberate ignorance or reckless disregard for the truth, did make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the UNITED STATES OF AMERICA, or knowingly concealed or improperly

21

avoided an obligation to pay or transmit money to the UNITED STATES OF AMERICA, in violation of 31 USC 3729 (a)(1)(G).

108.    That at all times hereinafter mentioned, the Defendant conspired to violate 31 USC 3729 (a)(1)(G), in violation of 3729 (a)(1)(C).

109.    That as a result of the above, the UNITED STATES OF AMERICA was caused to suffer significant pecuniary losses.

**WHEREFORE**, plaintiffs, as indicated above, demand judgment against the Defendant CITY OF NEW YORK in the amount of Five Hundred Million Dollars ($500,000,000.00) for each of the First, Second, and Third Causes of Action, together with attorneys' fees, costs, disbursements, interest, statutory damages, and exemplary damages, including but not limited to treble damages and fines as the law allows, including an $11,000 penalty per violation of the False Claims Act, 31 USC 3729 through 3733.

Dated: Staten Island, New York

February 5, 2016

Yours, etc.,

PAUL C. BIERMAN, ESQ.,

LAW OFFICE OF PAUL C. BIERMAN

Counsel for Plaintiff TESSLER

299 Broadway, Suite 1605

New York, New York 10007

(917) 697-8938

RICHARD B. ANCOWITZ, ESQ.

LAW OFFICE OF RICHARD B. ANCOWITZ

Counsel for Plaintiff GONZALEZ

110 Great Oaks Blvd.

Albany, New York 12203

(518) 464-0444


SANFORD ROSENBLUM, ESQ.

Co-counsel for Plaintiff GONZALEZ

LAW OFFICE OF SANFORD ROSENBLUM

110 Great Oaks Blvd.

Albany, N.Y. 12203

(518) 213-3012