```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
UNITED STATES OF AMERICA EX REL. AKIVA                            :
TESSLER, et al.,                                                  :
                                                                  :      14-CV-6455 (JMF)
                                       Plaintiffs,                :
                                                                  :      OPINION AND ORDER
              -v-                                                 :
                                                                  :
THE CITY OF NEW YORK,                                             :
                                                                  :
                                       Defendant.                 :
                                                                  :
------------------------------------------------------------------X
```

[USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #:_____ / DATE FILED: 12/16/2016]

JESSE M. FURMAN, United States District Judge:

In this *qui tam* proceeding, Relators Felix Gonzalez and Akiva Tessler ("Relators") bring claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, against the City of New York (the "City"). (Docket No. 44 (Second Am. Compl. ("SAC")) ¶¶ 1, 4-7). Relators allege that, in the course of administering two federally funded public benefits programs, the City submitted false or fraudulent claims to the federal government insofar as the City has (1) failed to recoup overpayments to "hundreds of thousands" of program recipients and (2) failed to recertify at least a thousand recipients for a Medicare program. (SAC ¶¶ 26-31, 97-109). The City now moves, pursuant to Rules 9(b) and 12(b) of the Federal Rules of Civil Procedure, to dismiss the Second Amended Complaint in its entirety. (Docket No. 50). For the reasons stated below, the City's motion is granted, and the Second Amended Complaint is dismissed.

## BACKGROUND

The following facts, which are taken from the Second Amended Complaint unless otherwise noted, are assumed to be true for purposes of this motion. *See, e.g.*, *Gonzalez v. Hasty*, 651 F.3d 318, 321 (2d Cir. 2011).

Relators' allegations fall into two categories.  The first category relates to "Aid to Continue" benefits offered in connection with two federally funded programs: the Supplemental Nutrition Assistance Program ("SNAP") (commonly known as "food stamps"), *see* 7 U.S.C. §§ 2011 *et seq.*, and "Public Assistance" programs, which are partially funded through the Temporary Assistance for Needy Families ("TANF") program, *see*  42 U.S.C. §§ 601 *et seq.* Under federal and state regulations, the City is tasked with determining eligibility for these programs.[1]  If the City determines that an aid recipient is no longer eligible for benefits or that his or her benefits should be reduced, the recipient is entitled to a fair hearing before an administrative law judge.  *See* N.Y. Comp. Codes R. & Regs. tit. 18, § 358-3.6(a)(1)(i), (c)(1)(i). If a hearing is requested, the recipient is granted "Aid to Continue" status so that his or her benefits effectively continue unchanged pending the outcome of the hearing.  *Id.*  In the event that the proposed action is upheld at the hearing, however, the City is required to "take all reasonable steps necessary to promptly correct any overpayments, including overpayments resulting from assistance paid pending a hearing decision." *Id.* § 352.31(d).  Relators allege that the City, "as a matter of custom and practice, failed to even attempt to recoup the overpayments of assistance received due to Aid to Continue Status, and failed to even issue notices of determinations to recoup those overpayments."  (SAC ¶¶ 49).

Relators' second category of allegations relates to the Medicare Savings Program, pursuant to which the State may use federal Medicaid funds "to pay Medicare Premiums and other medical expenses for certain low-income individuals." (*Id.* ¶ 83).  The State plays both a primary and intermediary role under this program:  It obtains monthly authorization lists from

---

[1]     There are significant differences between the regulatory scheme governing SNAP and the regulatory regime governing the City's Public Assistance programs, but those differences are immaterial for present purposes.

2

the City, pays out Medicaid funds to vendors based on that information, and obtains reimbursement from the federal government through a Quarterly Medicaid Statement of Expenditures ("Form CMS-64"). (SAC ¶¶ 91-93). State and federal regulations require the City to redetermine a recipient's eligibility for these benefits at least once every twelve months. *See* N.Y. Comp. Codes R. & Regs. tit. 18, § 360-2.2(e); 42 C.F.R. 435.916. Relators allege, however, that the City has provided Medicare Savings benefits "to more than one thousand Recipients without even attempting to re-determine their eligibility for these benefits." (SAC ¶ 87). Relators attach to the Second Amended Complaint an e-mail thread from 2013 in which a City employee referenced "a list of 1060" Medicare Savings Program "clients that have not had a renewal since 2004." (*Id.* Ex. 2). The City employee indicated that she had sent a notice to those recipients "closing" their "services." (*Id.*).

Relator Tessler was a Hearing Officer in the City's Office of Temporary Disability Assistance from 2011 to 2014. (*Id.* ¶¶ 4-5). Relator Gonzalez was, from 2012 to 2014, a Supervisor in the City's Human Resources Administration, in which capacity he represented the City in fair hearings. (*Id.* ¶¶ 6-7). They allege that, after authorizing benefits to ineligible recipients in the ways described above, "hundreds of thousands" of false or fraudulent "claims for such benefits were then made, or caused to be made, knowingly," by the City to the federal government, and that "said claims were then paid by the United States of America to the City of New York via the State of New York, as reimbursement for amounts paid to Recipients." (*Id.* ¶¶ 34-36). More specifically, they bring three claims under the FCA: (1) that the City knowingly presented or caused to be presented a false or fraudulent claim, *see* 31 U.S.C. § 3729(a)(1)(A) (SAC ¶¶ 97-100); (2) that the City knowingly made or caused to be made a false statement material to a false claim, *see* 31 U.S.C. § 3729(a)(1)(B) (SAC ¶¶ 101-105); and (3) that the City

knowingly made or caused to be made a false statement material to an obligation to pay the United States, or knowingly concealed or improperly avoided such an obligation, *see* 31 U.S.C. § 3729(a)(1)(G).  (SAC ¶¶ 106-109).  Relators filed their original complaint under seal in August 2014.  (Docket Nos. 1).  In April 2015, the United States declined to intervene.  (Docket No. 6, Ex. A).  Since then, Relators have filed two amended complaints.  (Docket Nos. 16 and 27).

## LEGAL STANDARDS

When reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor."  *ATSI Commc'ns, Inc. v. Schaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  The Court will not dismiss any claims pursuant to Rule 12(b)(6) unless the plaintiff fails to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.  Further, if a plaintiff has not "nudged [its] claims across the line from conceivable to plausible, [those claims] must be dismissed."  *Id.* at 570.

As the FCA is an anti-fraud statute, Relators' claims must also comply with Rule 9(b), which requires a plaintiff to plead fraud claims "with particularity."  Fed. R. Civ. P. 9(b).  In general, to comply with Rule 9(b) a complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Lerner v. Fleet Bank, N.A.*, 459 F.3d

273, 290 (2d Cir. 2006) (internal quotation marks omitted).  Whether a complaint complies with the Rule, however, depends "upon the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give notice to the adverse party and enable him to prepare a responsive pleading."  *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 333 (D. Conn. 2004) (internal quotation marks omitted).  In particular, "where the alleged fraudulent scheme involved numerous transactions that occurred over a long period of time, courts have found it impractical to require the plaintiff to plead the specifics with respect to each and every instance of fraudulent conduct."  *Id.*; *see United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 615-16 (S.D.N.Y. 2013).  Thus, "where a relator pleads a complex and far-reaching fraudulent scheme with particularity, and provides examples of specific false claims submitted to the government pursuant to that scheme, a relator may proceed to discovery on the entire fraudulent scheme."  *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 510 (6th Cir. 2007).  Specific examples, however, "will support more generalized allegations of fraud only to the extent that [they] are representative samples of the broader class of claims."  *Id.* (emphasis omitted); *see also Wells Fargo Bank*, 972 F. Supp. 2d at 615-16.

## DISCUSSION

### A.  "Aid to Continue" Claims

Applying the foregoing standards, Relators' claims must be dismissed.  As an initial matter, Relators' claims with respect to "Aid to Continue" benefits fall far short of satisfying Rule 9(b).  In fact, Relators fail to allege a single specific example of a false claim filed in connection with the City's alleged failure to recoup improper "Aid to Continue" benefits.  Instead, they rely on Tessler's assertion that it was the City's "custom and practice" not to

recoup overpayments and statistical evidence indicating only that very few hearings "concerning the issue of recoupment of overpayments received due to Aid To Continue status" were held in comparison with the number of fair hearings "on other issues." (SAC ¶¶ 44-52).[2] Tessler's assertions, however, are too conclusory to satisfy Rule 9(b); they "fail to provide the 'who, what, when, where and how' of these 'observations' and 'conversations.'" *Gublo v. NovaCare, Inc.*, 62 F. Supp. 2d 347, 354 (D. Mass. 1999); *see also In re Barclays Liquidity Cross & High Frequency Trading Litig.*, 126 F. Supp. 3d 342, 369 (S.D.N.Y. 2015). Compounding that failure, the Second Amended Complaint fails to provide an adequate basis for Tessler's alleged knowledge. It alleges that Tessler conducted fair hearings from 2011 to 2014, and cites 362 instances in which the agency's determination was affirmed (either on the merits or because the recipient failed to appear). (SAC ¶¶ 44-51). But to the extent the City was obligated to recoup "Aid to Continue" benefits from those recipients — and there are reasons, discussed below, that the City may not have been obligated to do so — such recoupment would have taken place *after* the hearing, presumably without Tessler's involvement or knowledge. (*See* SAC ¶¶ 48-50). Additionally, Tessler did not even become a Hearing Officer until 2011 (*see id.* ¶ 4), at least seven years after the scheme alleged by Relators purportedly began.

Relators' statistical evidence does not get their "Aid to Continue" claims across the Rule 9(b) line either. Relators allege that a state database of fair hearing determinations from 2006 to April 2014 "discloses less [sic] than three hundred fair hearings concerning the issue of recoupment of overpayments of assistance received due to Aid To Continue status" but "hundreds of thousands of fair hearings during the same period of time on other issues

---

[2]   Relators also allege that "employees of the Defendant" represent that "the Defendant customarily failed to recoup these overpayments." (SAC ¶ 52). Such conclusory allegations are plainly insufficient under Rule 9(b). *See, e.g.*, *McBeth v. Porges*, 171 F. Supp. 3d 216, 230 (S.D.N.Y. 2016); *In re Parmalat*, 383 F. Supp. 2d 587, 599 n.60 (S.D.N.Y. 2005).

concerning Public Assistance and SNAP benefit determinations by the Defendant." (SAC ¶ 51). Separate and apart from the fact that the Second Amended Complaint lacks any details regarding the database and its contents, however, that data reveals only that recoupment, however frequently or infrequently pursued by the City, was not ordinarily contested in fair hearings. (*See* SAC ¶¶ 50-52). On top of that, Relators do not acknowledge the fact that, under applicable law and guidelines, the City is not obligated to recoup SNAP and Public Assistance benefits unless they exceed certain thresholds. *See* 7 C.F.R. § 273.18(e)(2)(i); New York State Office of Temporary and Disability Assistance, Administrative Directive, 05-ADM-15 (Sept. 6, 2005), *available at* https://otda.ny.gov/policy/directives/2005/ADM/05-ADM-15.pdf; 18 N.Y.C.R.R. § 352.31(d)(5); *see also United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1106 (7th Cir. 2014) (affirming dismissal of a FCA complaint on Rule 9(b) grounds where it failed to identify a single case involving a dollar amount that exceeded the relevant regulatory thresholds). In short, absent more information, the statistical information contained in the Second Amended Complaint is borderline meaningless. It certainly does not suggest, let alone establish, the existence of a fraudulent scheme.

At bottom, therefore, Relators' claims with respect to "Aid to Continue" benefits are too conclusory to survive scrutiny, particularly under the heightened pleading standards established by Rule 9(b). The Second Amended Complaint includes nothing more than "general statements" of misconduct, which are insufficient. *United States ex rel. Bender v. N. Am. Telecomms. Inc.*, 499 F. App'x 44, 44-45 (D.C. Cir. 2013); *see also United States ex rel. Nichols v. Omni H.C., Inc.*, No. 02-CV-66 (HL), 2008 WL 906426, at *7 (M.D. Ga. Mar. 31, 2008) (describing allegations of "'widespread practice'" as "lacking in detail" and insufficient under Rule 9(b)). Indeed, Relators fail to allege even "a single example of when a purportedly false claim was

presented for payment by a particular defendant at a specific time." *Wood v. Applied Research Assocs., Inc.*, 328 F. App'x 744, 750 (2d Cir. 2009). That is "plainly insufficient under Rule 9(b)." *Id.*

## B. Medicare Savings Program Claims

That leaves Relators' claims with respect to the Medicare Savings Program. (SAC ¶¶ 29-31, 83-96). There is a stronger argument that those claims satisfy Rule 9(b) given the list attached to the Second Amended Complaint, but the Court need not reach the issue because the claims fail for at least two other reasons. First, to the extent that Relators bring an "express" false certification claim — that is, "a claim that falsely certifies compliance with a particular statute, regulation or contractual term," *Wells Fargo Bank*, 972 F. Supp. 2d at 622 (internal quotation marks omitted) — they must show that the City "falsely certifie[d] compliance with a *particular* statute, regulation, or contractual term, where compliance is a prerequisite to payment," *Mikes v. Straus*, 274 F.3d 687, 698 (2d Cir. 2001) (emphasis added). To the extent that Relators bring an "implied false certification" claim — that is, "based on the notion that the act of submitting a claim for reimbursement itself implies compliance with governing federal rules that are a precondition to payment," *Wells Fargo Bank*, 972 F. Supp. 2d at 622 (internal quotation marks omitted) — they must show, among other things, that the claim "makes *specific* representations about the goods or services provided," *Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 136 S. Ct. 1989, 1995 (2016) (emphasis added).

In either case, Relators fall short. The Second Amended Complaint alleges that New York State, which serves as an intermediary between the City and the federal government with respect to the Medicare Savings Program, obtains from the City "lists of persons authorized to receive Medicare Savings Program benefits on at least a monthly basis." (SAC ¶ 92). The State,

in turn, submits, a Form CMS-64 to the federal government, in which it "expressly" certifies "that the 'report only includes expenditures . . . that are allowable in accordance with applicable implementing federal, state, and local statutes, regulations, policies, and the state plan approved by the Secretary [of Health and Human Services].'"  (SAC ¶ 94 (first alteration in original)). Without more, those allegations are insufficient to support either an express false certification claim or an implied false certification claim.  (Notably, Relators do not even argue otherwise as to any express false certification claim.  (*See* Docket No. 51 ("Def.'s Mem."), at 19-22; Docket No. 54 ("Pls.' Opp'n"), at 7-10, 13; Docket No. 55 (Def.'s Reply"), at 7-8).  As to the former, "[o]ne cannot make an express legally false claim by incorrectly representing that one is generally law-abiding, even if only in some limited respect; the representation has to refer to compliance with a particular law."  *United States ex rel. Kraus v. Wells Fargo & Co.*, 117 F. Supp. 3d 215, 221 (E.D.N.Y. 2015).  And as to the latter, Relators fail to identify a sufficiently "specific" representation about the services provided to sustain an FCA claim.  *Escobar*, 136 S. Ct. at 2001.  To hold otherwise would result in an "extraordinarily expansive view of liability" under the FCA, a view that the Supreme Court rejected in *Escobar*.  *Id.* at 2004.

Second, and any event, to state a claim under the FCA, Relators must allege that the City "knowingly" presented (or caused to be presented) a false or fraudulent claim.  31 U.S.C. § 3729(a).  The Act defines "knowing" and "knowingly" to mean that a person has "actual knowledge of the information," "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information."  *Id.* § 3729(b)(1)(A).  The requirement is a "rigorous" one, *Escobar*, 136 S. Ct. at 2002, particularly because, under Rule 9(b), the proponent of an FCA claim "must allege facts that give rise to a *strong* inference of fraudulent intent," *Wells Fargo Bank*, 972 F. Supp. 2d at 620 (emphasis

9

added) (internal quotation marks omitted). Such an inference "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* (internal quotation marks omitted). Significantly, however, "conclusory allegations — that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things — do not satisfy the requirements of Rule 9(b)." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994).

Relators' allegations with respect to the Medicare Savings Program fall far short of satisfying these standards. Put simply, those allegations and the e-mail thread attached to the Second Amended Complaint support no more than an inference that, through mistake or system error, the City failed to redetermine eligibility for 1,060 people between 2004 and 2013, when the error was discovered and promptly corrected. (SAC ¶ 87; SAC Ex. 2). Those allegations do not support an inference — let alone a strong inference — of fraudulent intent, particularly since the Second Amended Complaint itself acknowledges that the Medicare Savings Program is part of an "extensive regulatory scheme" and that the State uses two different record systems to process authorizations and payments for services. (SAC ¶¶ 11, 92). That is, taken together, Relators' conclusory allegations and the e-mail thread they attach to the Second Amended Complaint do not even remotely support they inference that the City knew (or was reckless in not knowing) that it was causing false claims to be presented to the federal government on behalf of Medicare Savings Program recipients whose eligibility had not been redetermined in accordance with applicable regulations. That is fatal to Relators' Medicare Savings Program claims.[3]

---

[3]  Relators devote a substantial portion of their memorandum of law in opposition to the City's motion to a summary of the decision in *United States ex rel. Feldman v. City of New York*, 808 F. Supp. 2d 641 (S.D.N.Y 2011), before asserting — in largely conclusory fashion — that

**CONCLUSION**

For the foregoing reasons, the City's motion to dismiss is GRANTED, and the Second Amended Complaint is dismissed in its entirety.

The only remaining question is whether Relators should be granted leave to amend the Second Amended Complaint. Although leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, Relators do not request leave to amend, and the Court declines to grant them leave to amend *sua sponte*. First, a district court may deny leave to amend where amendment would be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Given the Court's reasoning here, there is nothing to suggest that Relators would be able to state a valid claim should the Court grant them leave to amend in this case. *See, e.g., Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive . . . it is not an abuse of discretion to deny leave to amend."). Second, Relators were previously granted leave to amend the complaint to cure the deficiencies raised in the City's first motion to dismiss — and expressly warned that they would "not be given any further opportunity" to do so. (Docket No. 37). Finally, as noted, Relators have not "requested permission to file a [Third] Amended Complaint" or "given any indication that [they] are] in possession of facts that would cure the problems" identified above. *Clark v. Kitt*, No. 12–CV–8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug.15, 2014). As Relators' "failure to fix

---

the "facts in the case herein . . . clearly and obviously mirror those of *Feldman*." (Pls.' Opp'n 5-12). But *Feldman* is distinguishable because, among other things, the Government attached specific examples of the alleged false claims to the Complaint. (Def.'s Reply 2 n.1). Additionally, the decision predates *Escobar*, which substantially changed the applicable legal standards.

deficiencies in [their] previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*," the Court declines to grant such leave here. *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013).

The Clerk of Court is directed to terminate Docket No. 50 and to close the case.

SO ORDERED.

Dated: December 16, 2016
New York, New York

_____
JESSE M. FURMAN
United States District Judge